UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD MARTELL,<br><br>                           Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY DEPUTY SHERIFFS COLE (#0473); NAPUTI (#3018); JOHNSON (#0497); LOVEJOY (#3215); LANNON (#0233); YOUNG (#0188); and DOES 1 through 5,<br><br>                           Defendants. | Case No.: 22-CV-920 JLS (MSB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; (2) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (3) DISMISSING COMPLAINT WITH PREJUDICE**<br><br>(ECF Nos. 7, 7-2) |

      Presently before the Court are Defendants San Diego County Deputy Sheriffs Cole, Naputi, Johnson, Lovejoy, Lannon, and Young's Motion to Dismiss ("Mot.," ECF No. 7) and Request for Judicial Notice in Support of the same ("RJN," ECF No. 7-2). Plaintiff Ronald Martell filed a Response in Opposition ("Opp'n," ECF No. 14) and Defendants filed a Reply in Support ("Reply," ECF No. 15) thereof. The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 12. Having considered Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties'

arguments, and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Request for Judicial Notice, **GRANTS** Defendants' Motion, and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint.

## BACKGROUND

On September 3, 2020, San Diego Sheriff's Deputies Brian Cole, Kerry Johnson, David Lovejoy, David Lannon, and Jonathan Young (collectively, "Defendants") responded to Plaintiff's home in El Cajon, California, to investigate a claim of domestic violence and assault. Compl. ¶ 7. Defendants forced entry into Plaintiff's home and ordered him to get on the ground. *Id.* ¶ 8. According to Plaintiff, as he was attempting to comply with Defendants' orders, he "was swarmed [by Defendants] and instinctively resisted" efforts to arrest him. *Id.* Plaintiff claims that as Defendants wrestled him to the ground, his arm was wrenched back so severely that he was later diagnosed with a dislocated shoulder and rotator cuff tear. *Id.* Plaintiff was charged with various offenses, *id.* ¶ 10, and ultimately pleaded guilty to one count of battery and, relevant here, one count of resisting, delaying, or obstructing a peace officer in violation of California Penal Code § 148. *Id.* ¶ 11. He was sentenced to summary probation. *Id.* ¶ 12.

Plaintiff filed the instant action on June 23, 2022. *See generally* Compl. He alleges Defendants used excessive force in violation of his Fourth Amendment rights, and therefore seeks money damages pursuant to 42 U.S.C. § 1983. *Id.* ¶¶ 15–20. Defendants responded with the instant Motion to Dismiss on September 6, 2022, arguing that Plaintiff's excessive force claim is precluded by his guilty plea for resisting, delaying, or obstructing a peace officer. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's Complaint ("Mem.," ECF No. 7-1) at 2.

## DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of the following exhibits: (1) Plaintiff's criminal complaint and plea agreement in *People v. Ronald Edward Martell*, Superior Court of California, Case No. CE401890CA, and (2) body-worn camera footage of the events in question. *See generally* RJN.

As a general rule, a district court cannot rely on evidence outside the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed. 1999)). Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

"Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the records of state courts." *Louis v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1156 (C.D. Cal. 2006). Accordingly, the Court finds that taking judicial notice of Exhibit (1) is appropriate, as it consists of state court records. Moreover, the documents contained in Exhibit (1) were referenced in Plaintiff's Complaint, *see* Compl. ¶¶ 10–12; consequently, the Court finds these materials were additionally incorporated by reference into the Complaint. As to the body-worn camera footage, the Court already has admitted this exhibit in its Order Granting Plaintiff's Request for Leave to Lodge Exhibit in Support of Complaint. *See* ECF No. 4. Accordingly, Defendants' request for judicial notice as to the body-worn camera footage is moot and therefore denied. *See Hinshaw v. China Times Media Grp.*, No. 220CV04302ODWJEMX, 2020 WL 6203571, at *2 (C.D. Cal. Oct. 22, 2020) ("[T]he Court need not take judicial notice of documents already filed in [an] action."), *appeal dismissed*, No. 20-56224, 2021 WL 5822547 (9th Cir. Aug. 11, 2021). In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Request for Judicial Notice.

# DEFENDANTS' MOTION TO DISMISS

## I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*   Finally, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

## II.    Analysis

Under the Supreme Court's ruling in *Heck v. Humphries*, a § 1983 claim is barred if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  512 U.S. at 487.  "[I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id.*  On the other hand, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."  *Id.*  "To decide whether success on a section 1983 claim would necessarily imply the invalidity of a conviction, [courts] must determine which acts formed the basis for the conviction.  When the conviction is based on a guilty plea, [courts] look at the record to see which acts formed the basis for the plea."  *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002, 1006 (9th Cir. 2022).

Plaintiff pleaded guilty to resisting, delaying, or obstructing a peace officer in violation of California Penal Code § 148(a)(1).[1]  *See* ECF No. 7-2 at 9.  "The legal elements of that crime are as follows: (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."  *Yount v. City of Sacramento*, 43 Cal. 4th 885, 894–95 (2008) (internal quotations omitted).  "California courts have held

---

[1] No subsection is indicated on Plaintiff's guilty plea, but Plaintiff's plea admits that he "did willfully obstruct or delay a police officer in the performance of his official duty," implying a violation of Penal Code § 148(a)(1).  *See* ECF No. 7-2 at 9.

that an officer who uses excessive force is acting unlawfully and therefore is not engaged in the performance of his or her duties." *Lemos*, 40 F.4th at 1006. Accordingly, "the 'lawfulness of the officer's conduct' is necessarily established as a result of a conviction under § 148(a)(1)." *Sanders v. City of Pittsburg*, 14 F.4th 968, 971 (9th Cir. 2021) (quoting *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011)). Stated differently, "a defendant can't be convicted under § 148(a)(1) if an officer used excessive force at the time of the acts resulting in the conviction." *Id.*

"It follows that *Heck* would bar [Plaintiff] from bringing an excessive-force claim under section 1983 if that claim were based on force used during the conduct that was the basis for [Plaintiff's] section 148(a)(1) conviction." *Lemos*, 40 F.4th at 1007; *see also Sanders*, 14 F.4th at 970 ("To avoid what's called the *Heck* bar on an excessive-force claim, a plaintiff must not imply an officer acted unlawfully during the events that form the basis of a resisting-arrest conviction under California Penal Code § 148(a)."). In that circumstance, "[i]n order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted." *Heck*, 512 U.S. at 487. As the Ninth Circuit explained:

> [A]n excessive force claim can't survive the *Heck* bar if it's predicated on allegedly unlawful actions by the officer at the same time as the plaintiff's conduct that resulted in his § 148(a)(1) conviction. Such an allegation would undermine the validity of the § 148(a)(1) conviction. On the other hand, if the alleged excessive force occurred before or after the acts that form the basis of the § 148(a) violation, even if part of one continuous transaction, the § 1983 claim doesn't necessarily imply the invalidity of [a] criminal conviction under § 148(a)(1).

*Sanders*, 14 F.4th at 971 (internal quotations and citations omitted).

Defendants argue that "[b]ecause Plaintiff's sole claim for excessive force necessarily implicates the validity of his criminal conviction, the claim is barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994)." Mem. at 2. Meanwhile, Plaintiff contends that in this case "there was simply no factual basis from which the Court could determine

which acts formed the basis for the plea," and therefore, "allowing this suit to proceed would not necessarily imply the invalidity of the conviction." Opp'n at 13 (emphasis omitted). The Court agrees with Defendants.

Here, the allegations in Plaintiff's Complaint "are not sufficient to show that his excessive force claim is distinct from the incident that led to his conviction for resisting an officer." *Price v. Galiu*, 723 F. App'x 557 (9th Cir. 2018). According to Plaintiff's Complaint, as Plaintiff was lowering himself to the ground in compliance with Defendants' orders, Defendants "swarmed" him. Compl. ¶ 8. At that time, he "instinctively resisted," and Defendants' threw him to the ground and his arm was wrenched behind him to subdue him. *Id.* Plaintiff alleges that "*the force applied to arrest/detain Plaintiff* was in contravention of constitutional and statutory duty, was in excess of any force required to address the circumstances, was grossly out of proportion to any need for force, was not employed in good faith, and was intended and substantially certain to cause serious bodily injury." *Id.* ¶ 17 (emphasis added). Thus, in Plaintiff's own version of events, the excessive force complained of was in reaction to and contemporaneous with Plaintiff's attempted resistance as he was being arrested. *Id.* Plaintiff's Complaint is devoid of facts that plausibly establish that Plaintiff's claim arises from either an "isolated factual context[]" within "one continuous chain of events," *Yount v. City of Sacramento*, 43 Cal. 4th 885, 899 (2008), or that it is "temporally or spatially" distinct from the conduct that resulted in his conviction for violating Penal Code § 148(a)(1), *Price v. Galiu*, No. 316CV00412BENPCL, 2017 WL 6371770, at *3 (S.D. Cal. Dec. 12, 2017) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005)), *aff'd*, 723 F. App'x 557 (9th Cir. 2018).

The record before the Court further undermines Plaintiff's argument. As stated above, courts must look at the record to establish which acts formed the basis of the guilty plea in order to determine if the claim is barred by *Heck*. Here, neither Plaintiff's charge summary nor his guilty plea specifies which acts supported the charge or conviction. *See* ECF No. 7-2 at 6, 9–11. The body-worn camera footage, however, demonstrates that

Plaintiff's resistance and the force applied to subdue Plaintiff arose from the same factual context. The footage shows two deputies enter Plaintiff's home and immediately order him to get on the ground. BWC 2:10–13. Within about five seconds, Plaintiff lowered himself to one knee. *Id.* at 2:13–18. One of the deputies then grabbed Plaintiff's arm to arrest him, and Plaintiff "instinctively resisted" and moved his arm forward. *Id.* at 2:23–24; Compl. ¶ 8. The deputy forced plaintiff to the ground and secured Plaintiff's arms behind his back while another deputy placed handcuffs on Defendant. BWC at 2:25–35. Plaintiff continued to resist, and one of the arresting deputies twice instructed Plaintiff to stop moving as he searched Plaintiff's person. *Id.* at 2:45–55. The deputy then instructed Plaintiff to roll over, at which point, Plaintiff became agitated, started yelling "Stop!", then told the deputy "What the f—k? I said stop!" and struggled with the deputy. *Id.* at 3:10–22. The deputy again forced Plaintiff back to the ground. BWC 3:22–25. The deputy then tried a second time to get Plaintiff to stand up. BWC 3:30–40. Plaintiff continued to tell the deputy to stop, and then yelled "What the f—k?!," at which point he was forced to the ground for a third time and deputies prepared to place him in a maximum restraint device. BWC 3:40–4:05. Only then did Plaintiff cease resisting the deputies' instructions.

Less than two minutes elapsed between the deputies entering Plaintiff's home and the deputies' decision to place him in a maximum restraint device. *See* BWC at 2:10–4:05. During this period, Plaintiff continuously resisted the deputies' orders. *See id.* Moreover, less than ten seconds elapsed between Plaintiff's "instinctive[] resist[ance]" and the use of force complained of by Plaintiff. *See id.* at 2:25–2:35. Due to the close relationship between Plaintiff's resistance and the deputies' efforts to subdue Plaintiff, the Court cannot reasonably separate the two acts into isolated factual contexts. *See Cunningham v. Gates*, 312 F.3d 1148, 1155 (9th Cir. 2002) (finding that because there was "no break" between plaintiff shooting at officers and the officers' response, the actions were "so closely interrelated" that the plaintiff's conviction foreclosed his excessive force claim against the officers); *see also Fetters v. Cnty. of Los Angeles*, 243 Cal. App. 4th 825, 840 (2016) (applying *Heck* bar where "pars[ing] the relevant facts . . . into two separate and distinct

incidents . . . would be to engage in the kind of 'temporal hair-splitting' that California and other courts correctly refuse to perform").

Plaintiff argues that because the plea form does not specify the factual basis supporting the conviction, "there was simply no factual basis from which the Court could determine which acts formed the basis for the plea"; therefore, allowing this suit to proceed would not necessarily imply the invalidity of the conviction. Opp'n at 13. Plaintiff speculates the guilty plea could have been based on any number of actions: Plaintiff's "initial refusal to get on the ground," his "refusal to get on the ground after he [got] to his knees," "flexing his arms," "stiffening up during efforts to roll him over," or his demands that the deputies "stop." *Id*. Plaintiff, however, cites to no authority, and the Court is not aware of any, holding that the *Heck* bar cannot apply to a guilty plea that does not specify the individual acts that formed the basis for a conviction.

Moreover, as the Court has already discussed, Plaintiff's crime and Defendants' actions were part of a single act. Reducing each of Plaintiff's actions into discrete episodes would render the *Heck* bar utterly toothless. In essence, Plaintiff would have the Court treat each step taken by a fleeing defendant as an independent basis for a Penal Code § 148(a)(1) conviction; unless a later guilty plea specified which step constituted the violation, the *Heck* bar could not apply under Plaintiff's theory. Neither *Heck* nor Ninth Circuit precedent demands such a result. Indeed, the Ninth Circuit has already rejected such arguments, holding that courts may not "slice up the factual basis of a § 148(a)(1) conviction to avoid the *Heck* bar." *Sanders v. City of Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021) (emphasis omitted). The California Supreme Court has held similarly. *See Yount*, 43 Cal. 4th at 896 ("[A]ny civil rights claim that is inconsistent with even a portion of [the plaintiff's] conviction is barred because it would necessarily imply the invalidity of that part of the conviction. Otherwise, a section 1983 plaintiff could routinely circumvent the *Heck* bar through artful pleading." (internal citation omitted)).

/ / /

/ / /

Plaintiff cites to several cases to support his argument that *Heck* is not a bar to his claim because the guilty plea does not specify which of his actions formed the basis of his conviction. Each of those cases, however, is distinguishable.

In *Lemos v. County of Sonoma*, a sheriff's deputy, Holton, attempted to question a woman inside a pickup truck, but she and three other relatives began yelling at him. 40 F.4th at 1003–04. Deputy Holton opened the door to the pickup truck to see if the woman was injured, at which point the woman's sister, Lemos, stepped between him and the door, pointed her finger at him, and shouted "You're not allowed to do that!" *Id.* at 1004. Holton told Lemos to step back and pushed her hand away. *Id.* The four women and the deputy then argued for several minutes as the deputy waited on backup. *Id.* "[S]ome five minutes after the initial encounter at the truck door," Lemos's mother told her to go inside the home. *Id.* As she began to do so, the deputy told her to stop. *Id.* She ignored his orders, and when Holton grabbed her arm to place her in handcuffs, she pulled away. *Id.* The deputy then tackled her and placed her under arrest. *Id.* She was charged with resisting arrest, and following her conviction by a jury verdict, brought a § 1983 claim for excessive force. *Id.* at 1003–05.

The jury was instructed that it could find Lemos guilty based on any one of four acts: "making physical contact with Holton at the door to the truck; placing herself between Holton and [the woman in the truck]; blocking Holton from opening the truck door; and pulling away from Holton when he attempted to grab her." *Id.* at 1007. The Ninth Circuit, however, clearly indicated that there were only two relevant factual contexts:

> Under the instructions, an officer could have been lawfully performing his duties at time A even if, at some later time B, he used excessive force. So if the jury found that Lemos resisted Holton at the truck and that Holton was acting lawfully at the time, it should have found her guilty, even if it also believed that Holton used excessive force when he tackled her five minutes later. Lemos's success in the section 1983 action thus would not necessarily contradict the verdict.

///

*Id.* at 1007. In other words, while the jury was given four independent bases for issuing a guilty verdict, three of those bases related to one distinct event (the encounter outside the pickup truck) and the final basis related to another distinct event (Lemos pulling away her hand as she walked to the house and Holton's act of tackling her). The Ninth Circuit did not attempt to argue that Lemos's actions outside the pickup truck constituted three different factual contexts; nor did it argue that Lemos's act of pulling away and Holton's tackle constituted different factual contexts. Doing so would wrongly "slice up the factual basis" of the conviction. *See Sanders*, 14 F.4th at 972. Rather, the Ninth Circuit isolated two instances of resistance because they occurred at least five minutes apart and in different locations.

Ultimately, the Ninth Circuit concluded that if Lemos were to prevail in her civil action, it would not "*necessarily*" mean her conviction was invalid because the jury did not specify which of Lemos's acts formed the basis of her conviction. Thus, "[t]here would be no contradiction in concluding . . . that Lemos obstructed Holton during the lawful performance of his duties by, say, blocking him from opening the truck door while also concluding . . . that Holton used excessive force when he tackled her five minutes later." *Lemos*, 40 F.4th at 1007. Therefore, *Heck* did not bar the action. *Id.* at 1007. Such reasoning, however, relies on the isolation of at least two factual contexts within a chain of events. Here, unlike in *Lemos*, there is only one factual context: the deputies' attempt to subdue and arrest Plaintiff over the course of approximately two minutes inside Plaintiff's apartment. Accordingly, here, there would be a contradiction in concluding, on the one hand, that Plaintiff obstructed Defendants during the lawful performance of their duties while also concluding, on the other hand, that Defendants used excessive force during Plaintiff's arrest.

*Yount v. City of Sacramento* involved a § 1983 claim by a plaintiff who was shot after he was arrested. 43 Cal. 4th 885. The plaintiff, Yount, initially resisted arrest and was eventually detained inside a patrol car. *Id.* at 889–90. As police officers attempted to investigate Yount's suspected drunken driving, Yount kicked the windows inside the patrol

car, and when he refused to calm down, one of the officers tased him. *Id.* at 890. Yount became more violent, eventually kicking out a window of the patrol car. *Id.* The officers tried to immobilize him, but once they pulled him out of the car, Yount assaulted an officer. *Id.* As Yount continued to resist, an officer, intending to tase Yount again, accidentally shot him. *Id.* at 890–91. According to the officers, about thirty minutes elapsed between the initial contact with Yount and the shooting. *See* Appellant's Opening Brief at 19–20, Yount v. City of Sacramento, 35 Cal. Rptr. 3d 563, 564 (Ct. App. 2005) (No. C046869).

The court in *Yount* found "two isolated factual contexts" under this set of facts, "the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer." *Yount*, 43 Cal. 4th at 899. The court explained that "'[t]he *subsequent* use of excessive force would not negate the lawfulness of the *initial* arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it.'" *Id.* (quoting *Jones v. Marcum*, 197 F. Supp. 2d 991, 1005 n.9 (S.D. Ohio 2002)) (emphasis added). In *Yount*, it was easy for the Court to separate Yount's resistance on the one hand, and the use of deadly force on the other. Here, on the other hand, the force used on Plaintiff and Plaintiff's resistance are inseparable, sharing the same temporal and spatial dimensions.

Likewise, in the final two cases cited by Plaintiff, the Ninth Circuit could easily distinguish between two factual contexts. In *Smith v. City of Hemet*, the Ninth Circuit noted that the plaintiff, Smith, obstructed officers in the course of their duties twice: first as they performed their "investigative" duties, and later "at the time of the arrest" when the excessive force was used against him. *See* 394 F.3d at 698; *see also Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1131 (9th Cir. 2011) ("The facts of *Smith* allowed us to differentiate cleanly between two phases of the encounter with the police."). Here, unlike in *Smith*, there was no investigative phase and arrest phase. There was only the arrest phase. Similarly, in *Hooper v. County of San Diego*, the Court held that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under Heck when the conviction and the § 1983 claim are based on *different actions* during

1 'one continuous transaction.'" 629 F.3d at 1134 (emphasis added). There, the plaintiff resisted arrest for possession of methamphetamine by jerking her hand away from a deputy. *Id.* at 1129. The deputy pinned her to the ground, and the plaintiff ceased resisting. *Id.* After she had stopped resisting, the deputy called his K-9 dog, which then attacked plaintiff and bit her head. *Id.* While the episode in *Hooper* only lasted 45 seconds, *id.*, the Court identified two different relevant actions: the plaintiff's initial resistance, and the K-9 attack after the plaintiff had stopped resisting. *See id.* at 1133–34. As the Ninth Circuit later described, in *Hooper*, "there was a clear delineation between lawful and unlawful police action." *Sanders*, 14 F.4th at 971. "*Hooper* merely holds that *Heck* presents no bar to an excessive force claim when an officer's allegedly unlawful action can be separated from the lawful actions that formed the basis of the § 148(a)(1) conviction, even if they occurred during one continuous transaction." *Id.* at 972. In this case, any unlawful action by the deputies cannot be separated from lawful action without "slic[ing] up" the facts in a manner that would undermine *Heck's* purpose of ensuring "finality and consistency" between criminal and civil judgments. *See Heck*, 512 U.S. at 484–86; *supra* pp. 9–10.

In each of the aforementioned cases, the alleged excessive force occurred after an act of resistance, and courts could isolate the former from the latter without engaging in the type of "temporal hair-splitting" upon which the Ninth Circuit and the California courts frown. Conversely, according to Plaintiff's Complaint and the record before the Court, the alleged excessive force in this case occurred simultaneously with the conduct that formed the basis for Plaintiff's conviction. Therefore, allowing Plaintiff's § 1983 claim to proceed would "necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Moreover, Plaintiff has not alleged that his conviction has been reversed, expunged, called into question by issuance of a writ of habeas corpus, or otherwise invalidated. *Heck*, 512 U.S. at 486–87. Consequently, *Heck* bars Plaintiff's § 1983 claim.

/ / /

/ / /

/ / /

## LEAVE TO AMEND

Plaintiff requests leave to amend the Complaint if the Court finds any pleading deficiency. Federal Rule of Civil Procedure 15 states that courts "should freely give leave [to amend] when justice so requires." Moreover, "[t]he Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). If a plaintiff's § 1983 claims are barred by *Heck*, "filing an amended complaint would be a futile act." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1041–42 (9th Cir. 2012), *disapproved of on other grounds*, by *Lemos*, 40 F.4th 1002. Here, the Court finds that Plaintiff's claims are barred by *Heck*. Amending the Complaint in this instance would be futile, as the body-worn camera footage submitted by Plaintiff would inevitably lead the Court to the same conclusion upon consideration of any amended claims. Accordingly, the Court denies Plaintiff's request for leave to amend the Complaint.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Request for Judicial Notice (ECF No. 7-2), **GRANTS** Defendants' Motion to Dismiss (ECF No. 7), and **DISMISSES WITH PREJUDICE** Plaintiff's Complaint (ECF No. 1). As this Order concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: January 9, 2023

Hon. Janis L. Sammartino
United States District Judge